JOHN J. GREENAN II, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF SPRINGFIELD, Defendant-Appellee.

Fourth District   No. 4—90—0612

Opinion filed March 28, 1991.—Modified on denial of rehearing June 12, 1991.

Gregory P. Sgro, of Sgro & LaMarca, of Springfield, for appellant.

Brown, Hay & Stephens and Edward G. Coleman, both of Springfield (Edward J. Cunningham, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, John Greenan, a former officer of the Springfield police department, appeals an order of the circuit court of Sangamon County affirming the decision of the Board of Trustees (Board) of the Police Pension Fund of Springfield (Fund) denying his application for a duty-related disability pension. We reverse and remand to the Board with directions.

Plaintiff became a Springfield police officer and member of the police pension fund on June 2, 1980. On March 17, 1987, his left knee was injured while subduing a suspect resisting arrest. Shortly thereafter, plaintiff was put on light duty, with no assurance this light duty would be permanently available. Plaintiff alleged the pain in his knee continued, and arthroscopic surgery was performed on August 18, 1987. The problems with his knee continued, and on January 25, 1989, plaintiff applied for a line-of-duty disability pension under section 3—114.1 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.1). Sometime during 1987 plaintiff applied for workers' compensation benefits.

On March 27, 1989, the Board heard plaintiff's application for a disability pension. The next day, the Board informed plaintiff by letter that it denied his application because of variance in the physicians' opinions, and lack of an objective finding of injury. Plaintiff sought judicial review of this decision on June 28, 1989. (Greenan v. Board of Trustees of the Police Pension Fund (Cir. Ct. Sangamon Co.), No. 89—MR—90.) Plaintiff took a leave of absence from the police depart-

ment on April 3, 1989, and accepted a position with the Secretary of State as a securities investigator.

On July 18, 1989, plaintiff settled his workers' compensation claim with the city. As part of this settlement, plaintiff agreed to resign his position with the police department. The city issued a separation report for the plaintiff on August 7, 1989, noting he had voluntarily resigned. Plaintiff did not sign this report. On September 8, 1989, the city's corporation counsel informed plaintiff he had not yet tendered his resignation, and requested a written resignation. Whether plaintiff ever tendered his resignation is not clear from the record.

On August 29, 1989, in case No. 89—MR—90, the circuit court, by letter opinion, indicated that it found the Board's decision as against the manifest weight of the evidence, and directed plaintiff's counsel to prepare a written order. No written order was entered. The Board, however filed a motion to remand, allowed on October 17, 1989, "specifically and solely for the limited fact finding" regarding plaintiff's resignation. A second Board hearing was held on December 14, 1989, and the Board introduced evidence showing plaintiff had resigned from the police department as part of the settlement of his workers' compensation claim with the city. Also introduced was the separation report for plaintiff issued by the city.

Although the circuit court remanded the cause *solely* for fact-findings regarding plaintiff's resignation, the Board passed a resolution on April 27, 1990, denying plaintiff's disability pension on the ground that he resigned from the police force and was therefore no longer a "police officer" under the Code. The circuit court considered this additional evidence in entering its order on August 28, 1990, which determined that plaintiff was not entitled to a disability pension as a matter of law because he had resigned from the force and was no longer a "police officer" within the meaning of section 3—114.1 of the Code. Accordingly, the circuit court affirmed the previous denial of benefits, although for different reasons. Plaintiff appeals this order of the circuit court.

The Fund, established by article 3 of the Code, provides a disability pension for injured police officers. Section 3—114.1 states, in relevant part:

> "Disability pension—Line of duty. If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a

disability retirement pension of 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality.

If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors in the sequence provided in Section 3—112." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.1.)

The Code imposes obligations on those receiving a disability pension to submit to medical exams and report for duty in times of emergency. Section 3—116 of the Code states, in part:

"Examination and emergency service. A police officer whose duty is suspended because of disability may be summoned to appear before the board, and to submit to an examination to determine fitness for duty. The officer shall abide by the board's decision. If a police officer retired for disability, except one who voluntarily retires after 20 years' service, is found upon medical examination to have recovered from disability, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position. In case of emergency, a disabled police officer may be assigned to and shall perform such duty without right to compensation as the chief of police or chief officer of the municipality may direct." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—116.)

The statute defines "police officer" as:

"Any person who (1) is appointed to the police force of a police department and sworn and commissioned to perform police duties; (2) is found upon examination of a duly licensed physician or physicians selected by the board to be physically and mentally fit to perform the duties of a police officer; and (3) within 3 months after receiving his or her first appointment, and if reappointed, within 3 months thereafter, makes written application to the board to come under the provisions of this Article." Ill. Rev. Stat. 1989, ch. 108½, par. 3—106.

The Board argues since plaintiff resigned he is no longer a police officer under the Code and is therefore not entitled to a disability pension. The Board further argues an individual must remain employed as a police officer the entire period he or she receives a disability pension, as the legislature never intended to allow a "non-police-

man" to draw a pension. In support, the Board cites the obligations of section 3—116, to submit to medical exam and be subject to recall for emergency duty. Since plaintiff is no longer a police officer, the Board argues he is under no obligation to perform these duties, and to award plaintiff a pension would give him all the benefits of the pension with none of its obligations.

Plaintiff counters that the Code only requires that he be employed as a police officer at the time of application for benefits, and subsequent changes in his employment status are meaningless. Although he has resigned, he argues he is still obligated to submit to physical exams and is subject to recall to duty in times of emergency. He argues the Board's jurisdiction does not arise from his status as a police officer, but exists by virtue of his receiving pension benefits—if he fails to comply with the obligations of section 3—116, the Board is authorized to terminate his pension benefits. Plaintiff further argues that to require an individual to remain an officer the entire time he or she receives a disability pension would allow the police department to terminate an individual's pension benefits by discharging him or her. Pension benefits would be terminated whether the officer was discharged with or without good cause, and this could lead to abuse. Plaintiff argues that to require an individual to remain employed as a police officer the entire time he or she is on a disability pension makes no sense given that section 3—114.1 states: "If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors ***." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.1.) If a person receiving a disability pension dies, then he or she is no longer a "police officer," yet the statute provides the pension continues to be paid.

Whether an applicant for a disability pension must remain employed as a police officer beyond the time of application for those benefits is not explicitly addressed by the Code. It is an issue of first impression in this district, and one rarely addressed in this State. We begin our analysis by noting several decisions interpreting article 4 of the Code, pertaining to fire fighters' pensions, which is similar in many respects to article 3, at issue in the instant case. (Ill. Rev. Stat. 1989, ch. 108½, par. 4—101 et seq.) In *Freberg v. Board of Trustees* (1970), 128 Ill. App. 2d 369, 262 N.E.2d 22, plaintiff, a fire fighter, was discharged because he had committed acts of indecent exposure. Four months later he applied for a disability pension on the basis he was emotionally disabled and unable to return to work. The court construed the Code to require an individual be employed as a fire fighter

at the time he or she applies for benefits. *Freberg*, 128 Ill. App. 2d at 374, 262 N.E.2d at 25.

Section 4—112 of the Code mandated that upon proof of recovery, a fireman's disability pension benefits cease, and required the fire chief or marshal to reinstate him into active service. (Ill. Rev. Stat. 1969, ch. 108½, par. 4—112.) Since that plaintiff had been discharged, reinstatement would be impossible. (*Freberg*, 128 Ill. App. 2d at 374, 262 N.E.2d at 25.) The court noted that section 4—113 provided an individual on disability pension the right to apply for a regular pension because that individual could credit the time spent on disability toward the 20 years needed for the regular retirement pension. The combined effect of sections 4—112 and 4—113 would "place [plaintiff] in a special classification wherein he would receive the benefits of these sections, without being bound by the obligations." (*Freberg*, 128 Ill. App. 2d at 374, 262 N.E.2d at 25.) The court held the statutory definition of fireman to include "a fireman on active duty, one on inactive duty, one on a leave of absence, one suspended, *or one retired*, but not an individual who has been discharged." (Emphasis added.) *Freberg*, 128 Ill. App. 2d at 374, 262 N.E.2d at 25.

The supreme court addressed this same issue in *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One* (1988), 122 Ill. 2d 22, 521 N.E.2d 923, and upheld the view that the statutory scheme requires that an individual must be employed as a fire fighter at the time of application for disability pension benefits. In *Di Falco*, a fire fighter applied for a disability pension a year after he was discharged. Plaintiff argued he need not be a fire fighter at the time of application, but need only have been employed as a fire fighter at the time of injury. The supreme court disagreed, stating that while there was no statutory provision requiring plaintiff to be a fire fighter at the time of application, various code provisions indicated this was the legislature's intent. *Di Falco*, 122 Ill. 2d at 30-31, 521 N.E.2d at 927.

The statute defined "firefighter" as a person employed by a city in its fire service, and the court held a discharged fire fighter was not so employed. (*Di Falco*, 122 Ill. 2d at 27-28, 521 N.E.2d at 925-26.) The court held section 4—112 imposed a duty to submit to annual physical exams, and provided the pensioner an absolute right to return to duty if and when he recovers from the disability. A discharge made this reinstatement to active duty impossible. The court reasoned that section 4—112 indicates "disability pensions are to be given only to fire fighters who would still be employed as fire fighters if not for their disability" (*Di Falco*, 122 Ill. 2d at 29, 521 N.E.2d at 926),

thereby implicitly approving the view earlier stated in *Freberg*. Finally, the court held section 4—113, which permitted a fire fighter to "elect to retire" from service, could not apply to a fire fighter already discharged since it was impossible for that person to retire. *Di Falco*, 122 Ill. 2d at 29, 521 N.E.2d at 926.

It is important to note that police officers on disability pensions are not subject to recall to active duty upon recovery from their disability. This is one instance where article 3 of the Code differs from article 4 on fire fighters' pensions. Section 3—116 of the Code does not *mandate* reinstatement to active service upon recovery of disability, but only requires the Board "certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—116.) This certification does not require the pensioner be returned to duty, nor does it provide an absolute right to his or her old position. In contrast, section 4—112 of the Code states that when a fire fighter recovers from disability, the "firefighter *shall* report to the marshal or chief of the fire department, who *shall* thereupon order reinstatement into active service." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 108½, par. 4—112.) Thus, the mandatory reinstatement to active duty which *Di Falco* and *Freberg* found was prevented by a fire fighter's discharge does not exist in the instant case.

The Second District Appellate Court has specifically held the right to a disability pension was not severed by a resignation tendered after the police officer applied for pension benefits. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871.) One month after applying for a not-on-duty disability pension, he tendered his resignation. In his resignation, plaintiff specifically purported to preserve any pension rights based on his pension application. *Hahn*, 138 Ill. App. 3d at 207-08, 485 N.E.2d at 872.

The court began its analysis by noting police and fire fighters' pensions "are to be liberally construed in favor of those to be benefitted." (*Hahn*, 138 Ill. App. 3d at 211, 485 N.E.2d at 875.) Following the definition of "fireman" in *Freberg*, the *Hahn* court held the phrase " 'any policeman' " in section 3—114.2 of the Code to include a retired police officer, "inasmuch as the statute itself envisions that the officer's condition will necessitate 'suspension or retirement.' " *Hahn*, 138 Ill. App. 3d at 212, 485 N.E.2d at 875, quoting Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.2.

As in the instant case, the pension board in *Hahn* argued the provisions in the Illinois Pension Code impose obligations on the pensioner, subjecting him to recall for emergency duty and requiring him

to submit to medical exams. The board argued plaintiff's retired status made performing these obligations impossible. The court rejected this argument, stating where "the statute grants the board and chief of police power to summon a pensioned officer, for examination and emergency duty, respectively, it is clear that the officer's retirement status cannot abrogate his duty to respond." (*Hahn*, 138 Ill. App. 3d at 213, 485 N.E.2d at 876.) Instead, the duty to respond to the board's request for physical exams and the police chief's request for an emergency call up is based on the pensioner's right to receive funds—if the pensioner refuses to perform these obligations, then the pension benefits may be terminated. *Hahn*, 138 Ill. App. 3d at 213, 485 N.E.2d at 876.

The Code and the decisions cited provide no hard and fast rules for determining whether plaintiff severed his right to a disability pension by resigning. Plaintiff argues *Freberg* and *Di Falco* hold the only critical time is that of application, and subsequent changes in employment status are irrelevant. However, *Freberg* and *Di Falco* did not examine this question, and only ruled on the effect of an applicant's employment status at the time of application. The Board argues these cases hold that an individual must remain employed as a police officer the entire time he or she receives disability pension benefits. Again, *Di Falco* and *Freberg* do not so hold. While the Board cites cases indicating an individual on disability remains an officer, these cases do not hold he or she *must* remain an officer to receive a disability pension. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Peifer v. Board of Trustees of the Police Pension Fund* (1976), 35 Ill. App. 3d 383, 388-89, 342 N.E.2d 131, 135-36.

■ We need not determine whether, in all cases, an individual must remain employed as a police officer beyond the time he or she applied for benefits. We hold that under the particular facts of this case, plaintiff's resignation did not sever his rights to the disability pension: plaintiff was a police officer at the time of injury and at the time he applied for a disability pension. In addition, we find it significant that plaintiff was an officer on March 27, 1989, when the Board heard plaintiff's application.

■ We agree with *Hahn* and hold that plaintiff continues to be bound by the obligations imposed by section 3—116 of the Code: to submit to medical examinations and be subject to recall in times of emergency. He has indicated he is ready, willing, and able to comply with all the obligations imposed by the Code. These obligations do not arise from plaintiff's employment status with the police department but rather from the Board's jurisdiction over one receiving disability

pension benefits. If plaintiff refuses to comply with the Code's provisions, the Board may terminate his benefits.

The Board argues the Code confers no discretionary powers upon it. However, it acknowledges the "pension fund is a public trust and must be administered by its trustees as a sacred fund for the benefit of all of its eligible members as the legislature has prescribed its terms and conditions." It seems inconceivable that as trustees of this Fund the Board would not have implicit powers to terminate pension benefits of pensioners who refused to comply with the obligations imposed by section 3—116. Indeed, at oral argument, counsel for the Board stated it would terminate the benefits of a pensioner who refused to appear for a medical examination.

■ We bear in mind that the Code must be liberally construed in favor of pensioners. (*Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, 521, 502 N.E.2d 718, 720.) Our holding is limited to the particular facts of this case, where plaintiff was a commissioned police officer at the time of injury, application for and hearing on his disability pension.

Even though plaintiff's resignation from the police force does not bar his pension rights, he would not have been entitled to a pension if he was not disabled. The circuit court in its letter opinion of August 29, 1989, indicated that the Board's initial decision denying plaintiff's disability pension because of a variance in the physicians' opinions and a lack of an objective finding of injury, was against the manifest weight of the evidence. However, that determination was not incorporated in an order as the case was then remanded to the Board solely for fact-finding regarding plaintiff's resignation. We remand to the circuit court with directions to make a determination as to whether the Board's March 27, 1989, decision was against the manifest weight of the evidence, and to enter judgment accordingly.

Reversed and remanded with directions.

SPITZ and KNECHT, JJ., concur.