2020 IL App (1st) 200526-U

FIRST DISTRICT,
FIRST DIVISION
November 16, 2020

No. 1-20-0526

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JOHN PAGOREK, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 2019 CH 06419 |
| BOARD OF TRUSTEES OF THE CITY OF | ) | |
| HARVEY'S FIREFIGHTERS PENSION FUND, | ) | Honorable |
| | ) | Michael Mullen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pierce and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Pension board terminated firefighter's disability pension, finding that he had recovered from his disability. We found the board's decision was against the manifest weight of the evidence, since the sole doctor who opined he was not disabled drew conclusions not supported by the record.

¶ 2    In 2007, the Board of Trustees of the City of Harvey's Firefighters Pension Fund (Board) granted a nonduty disability pension to plaintiff John Pagorek, finding him unable to perform his duties as a firefighter due to injury. Under section 4-112 of the Illinois Pension Code (40 ILCS 5/4-112 (West 2016)), firefighters under the age of 50 must undergo an annual medical

examination "to verify continuance of disability." Following Pagorek's 2017 medical examination, the Board voted to terminate his disability pension. Pagorek sought administrative review of the Board's decision in the circuit court, which affirmed. Pagorek now appeals. For the reasons that follow, we reverse the decision of the Board.

¶ 3                                              BACKGROUND

¶ 4                                Pagorek's Initial Disability Application

¶ 5          In 1997, the Harvey Fire Department hired Pagorek as a firefighter. In January 2005, Pagorek slipped and fell. Thereafter, he began experiencing severe pain in his lower back and legs. Medical examinations revealed that he had spondylolysis (a stress fracture in the spine) as well as "grade I spondylolisthesis of L5 upon S1." (Spondylolisthesis is a slippage of adjacent vertebrae—in Pagorek's case, his L5 and S1 vertebrae. It comes in five grades, with grade I being the least serious.) Both the spondylolysis and the spondylolisthesis were preexisting conditions, but his symptoms were triggered by his acute injury in 2005.

¶ 6          Pagorek filed for a disability pension. On November 2, 2005, he underwent a functional capacity evaluation (FCE) which recommended that he not lift loads greater than 120 pounds and not carry loads greater than 100 pounds. The FCE report explained that, under testing conditions, he could function at the "very heavy" physical demand level, but he "demonstrate[d] signs of breakdown of proper lifting mechanics (slight loss of a neutral spine)" for loads greater than 120 pounds. During an actual fire, a firefighter may be required to lift victims and coworkers "in body positions that are at a much less mechanical advantage *** [than] during this evaluation." Thus, if Pagorek returned to full duty, he risked re-injuring himself and jeopardizing the safety of victims and coworkers.

¶ 7        On December 6, 2005, Dr. Howard Robinson, Pagorek's treating physician, reviewed the FCE and concluded that Pagorek was at "maximum medical improvement." He released Pagorek with a lifting restriction of 120 pounds, a restriction which he characterized as "permanent."

¶ 8        The Board retained three doctors to examine Pagorek in 2006. Dr. John Dwyer opined that Pagorek could not work as a firefighter but could perform "limited or light duty activities" if they did not involve lifting over 40 pounds or prolonged sitting or standing. He further stated, "This represents a permanent impairment concerning full duty firefighter." Dr. George Miz opined that Pagorek was "currently and permanently disabled" and that surgical intervention was "not likely" to allow him to return to full unrestricted duty. Finally, Dr. Terrence Moisan opined that Pagorek could not engage in unrestricted duties "at this time," but he "hope[d]" that his pain would improve in time and opined that future therapy "might" allow him to return to work.

¶ 9        On June 13, 2007, the Board granted Pagorek a nonduty disability pension. The Board issued findings that Pagorek "is presently unable to perform his duties as a firefighter due to the pain of his injury to his back at L5-S1" and that he "is permanently, medically disabled for service in the Fire Department."

¶ 10                            Events Between 2007 and 2017

¶ 11        As noted, section 4-112 of the Illinois Pension Code (40 ILCS 5/4-112 (West 2016)) requires that firefighters receiving disability pensions receive periodic medical examinations to "verify continuance of disability." In 2015, the Board selected Dr. Thomas Gleason to examine Pagorek.

¶ 12        Dr. Gleason diagnosed Pagorek with grade I to II spondylolisthesis with moderate degenerative disc disease and intermittent right lumbar radicular syndrome. He reviewed a

report of a 2005 MRI scan of Pagorek's lumbar spine and concluded that there had been "no acute changes" since then. He opined that Pagorek was capable of full-time work but was "disabled to the point he is unable to perform full and unrestricted firefighting duty." He further opined that no treatments would reasonably be expected to return Pagorek to full duty.

¶ 13    In conjunction with the examination, Pagorek submitted an affidavit of eligibility to the Board on August 8, 2015. In that affidavit, he stated that he had not received any treatment or physical therapy for his condition since being awarded a disability pension. As shall be discussed below, Pagorek later testified he did not seek treatment because he lacked health insurance.

¶ 14                    Pagorek's 2017 Examination and the Instant Proceedings

¶ 15    In 2017, the Board selected Dr. Julie Wehner, a board-certified orthopedic surgeon, to examine Pagorek. During the exam on May 24, 2017, Pagorek told Dr. Wehner that on a daily basis, he experienced a pain level of 5 out of 10 in his lower back, radiating down to his big toe. But Dr. Wehner found that he "does not appear in any distress" and only experienced "some mild pain" when she palpated his L5-S1 area. Dr. Wehner also noted that Pagorek self-reported a "very active lifestyle": he worked 40-hour weeks as a satellite dish technician, which required him to lift 30-pound objects and climb ladders, and he was able to mow his grass and use a snowblower.

¶ 16    Based on her observations, plus her review of Pagorek's medical records, Dr. Wehner issued a report opining that he was no longer disabled to the point he could not return to full and unrestricted duty. She stated that grade I spondylolisthesis is present in 6% of the population, "many" of whom have no significant pain; thus, Pagorek's spondylolisthesis was not, by itself, a disabling condition. Rather, his subjective pain complaints were the "major reason" for his 120-

pound lifting restriction. But she opined that his reported pain level "is difficult to reconcile with his present clinical exam and ability to function otherwise. *** It is difficult to reconcile that he continues to have these subjective complaints merely on the basis of [his 2005 MRI]. The majority of people do not continue to have this level of pain after 10-12 years."

¶ 17    The Board held a hearing to determine whether Pagorek had recovered from his disability. At the hearing, Dr. Wehner testified that as an orthopedic surgeon, she performed surgeries, examined patients, and conducted independent medical examinations (IMEs). She estimated that 30% of her practice was devoted to "medical/legal type work," including IMEs in workers' compensation cases and firefighter disability cases. She acknowledged that in 99% of her workers' compensation cases, she was retained by the insurer or employer; she said this was because the "vast majority" of injured workers were represented by their own treating physician rather than an independent examiner.

¶ 18    Dr. Wehner also elaborated on her observation that Pagorek was not in "acute distress" during the exam. Despite his reported pain level, she did not notice any facial grimacing, posturing, or "splinting" (trying not to move his back). His gait and heel-toe pattern were normal when walking across the room. Dr. Wehner explained that walking on one's heels indicates that the L4 and L5 nerve roots are working well, and walking on one's toes indicates that the S1 nerve root is working well. Additionally, she found that Pagorek's motor strength was normal, based on his ability to "push up with [his] big toe" and walk on his heels and toes.

¶ 19    Dr. Wehner administered two tests to Pagorek to check for "symptom magnification," both of which returned negative results. First, she performed axial compression (pressing down on his shoulders); second, she performed axial rotation (standing behind him and rotating his back without rotating his spine). Both of these actions would not be expected to cause back pain

in a person with Pagorek's condition, and, in fact, Pagorek did not display back pain. "So there was not symptom magnification," Dr. Wehner concluded.

¶ 20    Nevertheless, Dr. Wehner reiterated her opinion that Pagorek was capable of returning to full and unrestricted duty. She stated that it was possible to have grade I to II spondylolisthesis but no strength deficits, no range of motion deficits, and no disabling pain; in fact, prior to Pagorek's acute injury in 2005, he was able to perform full firefighter duties despite his preexisting condition. She further stated that most people with Pagorek's condition experience a decrease in pain symptoms over time, and many eventually become asymptomatic.

¶ 21    Based on Pagorek's 2005 FCE, Dr. Wehner opined that Pagorek was "basically an inch away from a full-duty job release" in 2005, since the report stated he was capable of "very heavy" physical activity. Although she could not pinpoint when he recovered, she "would have thought" he recovered before his 2015 exam by Dr. Gleason. She disagreed with Dr. Gleason's finding of disability because "the clinical findings don't show any abnormality that would warrant restrictions. So he's basing it off of subjective complaints."

¶ 22    Dr. Wehner further opined that Pagorek could lift 120 pounds over his shoulder. She stated that "slight loss of a neutral spine" (as described in the FCE) did not indicate he was medically incapable of performing the maneuver. Moreover, she denied that lifting heavy loads could exacerbate his spinal condition, stating: "I've never seen it in any medical journal or any medical book that lifting something would cause a spondylolysis or spondylolisthesis to progress."

¶ 23    In response, Pagorek submitted reports by two of his treating physicians, Dr. Jennifer Bayer and Dr. Shaun Kondamuri. Dr. Bayer, an orthopedic surgeon, examined Pagorek on July 17, 2017. He presented with moderate pain at the five to seven level, mostly on the right side of

his lower back and radiating down his right leg into his right foot. An x-ray confirmed he had spondylolisthesis of his L5 and S1 vertebrae (specifically, anterolisthesis, which is forward slippage). Dr. Bayer's assessment was as follows:

> "[B]ased off of his anterolisthesis on xray, it sounds like this is more of a chronic condition and unchanged from his prior injury as a firefighter. He does continue to have low back pain with radicular symptoms which is unchanged from his prior injury. At this time, I feel that anything that would involve heavy lifting such as people that are 100-150 lbs. or greater especially out of tight spaces as a firefighter, I feel may put him at more of a risk for recurrent injury for his back which could potentially endanger someone[.] *** [H]e could do daily activities such as sitting at a desk, standing, walking, and going up stairs and ladders."

¶ 24    Dr. Bayer referred Pagorek to Dr. Kondamuri, a pain specialist, who examined Pagorek on April 30, 2018. In his notes, Dr. Kondamuri wrote that Pagorek "has moderate to severe pain necessitating interventional pain management. While the patient reports some symptom relief, patient still has quite severe pain." Dr. Kondamuri further wrote, "He cannot safely work as a fireman with this condition." He recommended epidural steroid injections and physical therapy. On December 17, 2018, Dr. Kondamuri wrote a note stating that Pagorek "is currently unable to work as a fireman."

¶ 25    The Board forwarded Dr. Bayer and Dr. Kondamuri's records to Dr. Wehner, who reviewed them and wrote that her opinions had not changed. She stated that Dr. Bayer and Dr. Kondamuri "did not review any prior treating records of Mr. Pagorek and therefore relied solely on his subjective reports of pain." She also reiterated her opinion that "[t]here is no radiographic finding that prevents [Pagorek] from returning to work as a fire fighter."

¶ 26       At the Board's hearing, Pagorek testified that he was in constant pain at a level of 5 out of 10 or more. During his testimony, it was 7 out of 10 because he had been sitting for an extended period. The pain was in his lower back, radiating down his right leg into his right foot; recently, it also started radiating down his left leg. Additionally, his legs had gotten weaker over time. Both pain and loss of strength led him to file his initial petition for a disability pension, and his condition had "[a]bsolutely not" improved since he was first awarded a pension.

¶ 27       Regarding limitations on his daily life, Pagorek testified that he had difficulty standing for prolonged periods and sometimes had difficulty walking. For this reason he used a riding lawnmower instead of a push lawnmower. Bending and twisting in certain ways also caused him pain. He could not, for instance, bend down to fold a shirt on his bed, nor could he pick up his children. Rising from a kneeling position was also difficult for him. He would "[a]bsolutely not" be able, in a fire, to pick up a 150 to 200-pound person, put them on his shoulder, and carry them out.

¶ 28       For his pain, Pagorek took three medications: Flexeril (a muscle relaxant), Naproxen (an anti-inflammatory drug), and Tramadol (a pain relief drug). He stated that he had been taking the Flexeril "from the start" and "pretty much straight through," except for periods where he ran out between doctor's appointments. He also took a mix of prescription and over-the-counter Naproxen, depending on availability. He started taking Tramadol three years ago.

¶ 29       Pagorek acknowledged that from 2006 to 2017, he did not get physical therapy or other treatment for his back besides pain medications. He explained that he lacked health insurance during that time, except for a few months in 2017 when he purchased a "family plan" so that his daughter could have surgery for scoliosis. He further stated that his doctors in 2005 led him to believe that nothing would improve his condition except surgery, which he had been avoiding

because "[t]he first doctor scared me with it a lot." That doctor advised him to wait "until [he couldn't] walk any more" and then have surgery.

¶ 30     At the time Dr. Wehner examined Pagorek, he was working as a Direct TV technician, a job which he held for nine months. His job included installing satellite dishes, and "on occasion" he would have to climb a ladder. The ladders were "50 pounds, tops." Each satellite dish was 30 pounds in total, but he could carry it up in different pieces to lighten the load, and he "didn't do a lot of them." He also worked "on and off" in a pizzeria, mainly in an advisory and publicist role.

¶ 31     In September 2017, Pagorek got a new job at U.S. Steel as a metal inspector, which involved pushing buttons while either sitting or standing. Once his new job's health insurance "kick[ed] in" at the end of the year, he went to see Dr. Bayer and Dr. Kondamuri. He received multiple epidural injections for pain relief and was scheduled to start physical therapy in late December 2018. He was still contemplating surgery, particularly since his pain had started expanding into his left leg.

¶ 32     At the close of the hearing, Pagorek's counsel pointed out that Dr. Wehner was the only one who opined that Pagorek could go back to work, and argued that she was "extremely biased" based on her admission that she testified on behalf of insurers and employers 99% of the time. Counsel also urged the Board not to terminate Pagorek's benefits until another FCE could be performed to ascertain his physical limitations.

¶ 33     By a vote of three to one, the Board terminated Pagorek's disability pension. The majority stated that it accorded "substantial weight" to Dr. Wehner's opinion and less weight to the opinions of Pagorek's treating physicians, since Pagorek only sought treatment after pension-related proceedings had begun. The majority also found it significant that Pagorek "did not seek any specific treatment for low back pain for well over a decade."

¶ 34 Pagorek filed an administrative appeal with the circuit court, which affirmed the Board's decision "reluctantly." The court stated that it would not have chosen to terminate Pagorek's pension in the first instance, but the Board's decision was not against the manifest weight of the evidence. The court further noted there were questions as to Dr. Wehner's bias, but those issues were fully aired at the hearing and the Board still chose to find her credible.

¶ 35                                                    ANALYSIS

¶ 36 Because this is an administrative appeal, we review the decision of the Board, not the decision of the circuit court, and our review is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)). *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). We defer to the Board's factual findings unless they are against the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident. *Id.* at 504-05 (applying a manifest weight standard to the issue of whether the evidence supported the Board's denial of a disability pension). Although this is a considerably deferential standard (*Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 234 Ill. 2d 446, 463 (2009)), we are mindful that "our review cannot amount to a rubber stamp of the proceedings below merely because the Board heard witnesses, reviewed records, and made the requisite findings." *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211 (2006).

¶ 37 Under the Pension Code, a firefighter's pension may not be terminated without " 'satisfactory proof' " that the pensioner has recovered from his disability. *Hoffman v. Orland Firefighter's Pension Board*, 2012 IL App (1st) 112120, ¶ 26 (quoting 40 ILCS 5/4-112 (West 2016)). Here, the Board argues that Dr. Wehner's opinion constitutes such proof. It does not dispute that Pagorek still has spondylolysis and spondylolisthesis, but it argues that his

symptoms have sufficiently abated to allow him to perform unrestricted firefighting duties. Pagorek, on the other hand, argues that the Board's decision is against the manifest weight of the evidence because it "disregard[s] every one of its doctors from the original proceeding; disregard[s] Dr. Gleason's 2015 independent medical examination; and completely disregard[s] the opinions of Pagorek's treating doctors."

¶ 38        As a threshold matter, we note that the opinions of the doctors in the original proceeding are not directly in issue here.  This appeal does not concern whether Pagorek was disabled in 2006, but whether he had recovered from his disability in 2017.  Although Dr. Robinson, Dr. Dwyer, and Dr. Miz all opined that Pagorek's disability was "permanent," the Pension Code defines as "permanent" any disability that "(1) can be expected to result in death, (2) has lasted for a continuous period of not less than 12 months, or (3) can be expected to last for a continuous period of not less than 12 months."  40 ILCS 5/4-105b (West 2016).  Thus, a finding of "permanent" disability is not inconsistent with a pensioner's recovery more than 12 months later.

¶ 39        However, Dr. Gleason's 2015 opinion is still relevant, because there is no basis in the record to conclude that Pagorek recovered between 2015 and 2017.  Dr. Wehner, the only doctor to opine that Pagorek had recovered, testified that his recovery occurred prior to 2015 and that Dr. Gleason erred in his finding of disability.  Thus, Dr. Gleason's opinion is directly in issue in this proceeding.

¶ 40        Dr. Gleason, Dr. Bayer, and Dr. Kondamuri all opined that Pagorek's back condition prevented him from performing full and unrestricted firefighter duties.  Dr. Bayer explicitly found that Pagorek's symptoms were "unchanged from his prior injury," while Dr. Gleason found "no acute changes" in Pagorek's condition since his 2005 MRI scan.  In contrast, Dr. Wehner was the sole doctor who opined that Pagorek had sufficiently recovered to perform firefighting duties.

Having reviewed the record in detail, we find the Board's reliance on Dr. Wehner's opinion to the exclusion of all the other evidence, medical and otherwise, to be against the manifest weight of the evidence. Multiple aspects of Dr. Wehner's opinion were not supported by the facts, both with regard to Pagorek's physical capabilities and to his allegations of pain. See *Wade*, 226 Ill. 2d at 506 (finding it "incomprehensible" that Board would credit the opinion of a doctor who made multiple misstatements of the evidence and whose opinion was contradicted by five other doctors).

¶ 41     Dr. Wehner first opined that Pagorek was physically capable of firefighter work, including picking up a 150- to 200-pound person and carrying them out of a fire. She based this conclusion, in significant part, on her assertion that Pagorek "doesn't seem to have any limitations in his daily life at this point." However, Pagorek gave detailed and uncontradicted testimony about the limitations he faces in his daily life, including being unable to pick up his children and having difficulty bending over, twisting, and rising from a kneeling position when performing household tasks.

¶ 42     Dr. Wehner also based her conclusion on Pagorek's job as a satellite dish technician. But the record does not reflect that this job—which he only held for nine months before finding a less physically demanding position—was physically comparable to firefighting. On the contrary, Pagorek explained that while he "on occasion" had to climb a ladder to install a 30-pound satellite dish, he could carry it up in parts to lighten the load, and the ladders themselves weighed no more than 50 pounds.

¶ 43     Thus, Pagorek's case contrasts sharply with *Rhoads v. Board of Trustees of City of Calumet City Policemen's Pension Fund*, 348 Ill. App. 3d 835 (2004), which the Board cites on this issue. Rhoads was granted a disability pension as a result of a knee injury. Five years after

he left the police force, the Board hired an investigator who filmed him working as a rodeo clown "running, jumping, climbing fences, dancing, running from bulls, leaping on top of and off a barrel, climbing into a barrel, carrying the barrel and being rammed by a bull while crouched inside the barrel." *Id.* at 838. Additionally, multiple doctors opined that he could perform administrative work within the police department, while Rhoads introduced no medical opinions to the contrary. *Id.* at 838-39. The Board terminated Rhoads' pension, and we affirmed, agreeing with the Board's finding that his activities were "totally inconsistent" with his claim of disability. *Id.* at 838, 842. By contrast, none of Pagorek's activities are inconsistent with his claim of disability, nor does he lack medical opinions corroborating his claim. Notably, Pagorek has not had another FCE since his original 2005 FCE that recommended he not lift over 120 pounds and not carry over 100 pounds.

¶ 44     Second, Dr. Wehner opined that Pagorek's subjective complaints of pain were unfounded. As support for this opinion, Dr. Wehner stated that Pagorek "has [not] used any medication for the back in over 10 years," and she later reiterated that "he does not use any medication." But in fact, the record reflects that Pagorek was taking multiple medications to alleviate his back pain. Dr. Wehner also stated that Pagorek "did function as a firefighter with [L5-S1 spondylolisthesis] in the period of his initial hiring in 1997 to his report of the accident in 2005." But there is no evidence to indicate that Pagorek had spondylolisthesis in 1997. Although medical testimony indicates that Pagorek's spinal condition predated his 2005 acute injury, it is unclear when it developed. Moreover, Dr. Wehner acknowledged that both of her tests for "symptom magnification" returned negative results.

¶ 45     Thus, we find this case analogous to *Kouzoukas*, 234 Ill. 2d 446, in which our supreme court reversed the Board's denial of a disability pension. Kouzoukas was a police officer who

began experiencing severe back pain after a duty incident. "[N]o medical test, X-ray or MRI scan revealed a deformity or abnormality which would explain the reason for Kouzoukas' pain" (*id.* at 465); in fact, one doctor referred to an MRI of her spine as "pristine," and her treating physician acknowledged there was nothing "surgically wrong" with her back. Nevertheless, "every doctor who examined Kouzoukas believed that she was, indeed, experiencing pain." *Id.* at 466-67. Although one doctor opined that her pain was not "incapacitating," his opinion "stands alone in opposition to the opinions of the several other doctors who treated Kouzoukas since her injury." *Id.* at 467. Based on this evidence, our supreme court found there was insufficient evidence for the Board's decision to deny disability benefits. *Id.* at 468.

¶ 46        Similarly, every doctor who examined Pagorek determined that he was experiencing pain. Even Dr. Wehner found "mild" pain when she palpated his L5-S1 area, although she disputed that his pain was disabling. Furthermore, the evidence of disability is stronger here than in Kouzoukas, since MRI scans have plainly established that Pagorek has a spinal fracture and slipped vertebrae that caused his initial disability in 2007 and that persist to this day.

¶ 47        The Board nevertheless argues that the present case is analogous to *Antonelli v. Board of Trustees of the Hillside Police Pension Board*, 287 Ill. App. 3d 348 (1997), and *Trettenero v. Police Pension Fund of City of Aurora*, 333 Ill. App. 3d 792 (2002), both cases in which we affirmed the Board's termination of a disability pension. We find these cases readily distinguishable on their facts.

¶ 48        In *Antonelli*, 287 Ill. App. 3d at 349, plaintiff was receiving a disability pension based on degenerative disc disease and lower back pain. Two doctors examined him and opined that he could return to work. The first doctor "could not find any objective evidence for plaintiff's back pain"; similarly, the second doctor found no abnormalities in plaintiff's spine and opined that he

"was in no discomfort with respect to his lower back condition." *Id.* at 351-52.  Although a third doctor offered a dissenting opinion, the Board was not required to find the lone dissenter credible.  *Antonelli* is not comparable to the present case, where it is undisputed that Pagorek has a spinal condition causing him pain, and three doctors have all opined that his condition prevents him from resuming full and unrestricted firefighter duties.

¶ 49        In *Trettenero*, 333 Ill. App. 3d at 794, plaintiff was receiving a pension based on mental disability stemming from depression, anxiety, and PTSD.  Subsequently, three doctors examined her.  The first concluded that she had recovered from her PTSD and was not disabled.  The second agreed that she had recovered from her PTSD, but found she had "minimal residual phobic anxiety" and that her PTSD might recur if she were to return to work.  *Id.* at 795.  He opined she was disabled but acknowledged there was "no medical basis" to conclude his opinion was more valid than that of the first doctor.  *Id.* at 796.  Finally, the third doctor found she still had PTSD and was disabled.  *Id.*  This, too, is not comparable to the present case, in which Dr. Wehner is the only doctor to opine that Pagorek has recovered, her opinion is founded on multiple statements that are not supported by the record, and all of the other doctors are unequivocal in their opinions that he remains disabled.

¶ 50        Accordingly, under *Kouzoukas* and *Wade*, we find that the Board's termination of Pagorek's disability pension was against the manifest weight of the evidence.

¶ 51                                CONCLUSION

¶ 52        For the foregoing reasons, we reverse the Board's decision to terminate Pagorek's disability pension.

¶ 53        Reversed.