ROBIN TRETTENERO, Plaintiff-Appellant, v. THE POLICE PENSION FUND OF THE CITY OF AURORA *et al.*, Defendants-Appellees.

Second District   No. 2—01—0544

Opinion filed September 5, 2002.

794

[black redaction bars]

Thomas F. McGuire, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Charles H. Atwell, Jr., of Atwell & Atwell, of Aurora, for appellees.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Robin Trettenero, appeals from the trial court's order affirming the decision of the Board of Trustees of the Police Pension Fund of the City of Aurora, Illinois (the Board), terminating her not-on-duty disability pension (40 ILCS 5/3—114.2 (West 2000)). Plaintiff contends that the Board's termination of her disability pension (1) denied her due process and equal protection of the laws (Ill. Const. 1970, art. I, § 2); and (2) was contrary to the manifest weight of the evidence. We affirm.

Plaintiff was hired as a police officer in Aurora in 1985. In 1991, she applied for a disability pension, requesting a line-of-duty disability pension (40 ILCS 5/3—114.1 (West 2000)), or, alternatively, a nonduty pension (40 ILCS 5/3—114.2 (West 2000)). Plaintiff alleged that she suffered from a mental disability resulting from stress. She argued that the stress resulted from witnessing acts of police brutality; being joined as a defendant in a suit alleging brutality; being the target of unfavorable press attention; and difficulties in her relationship with her coworkers and supervisors.

In 1993, the Board denied plaintiff's request for a line-of-duty pension but granted plaintiff a nonduty disability pension. The circuit court affirmed the Board's order denying the line-of-duty pension, and this court subsequently affirmed the denial. *Trettenero v. Police Pension Fund*, 268 Ill. App. 3d 58, 69 (1994).

In accordance with the provisions of the Illinois Pension Code (Pension Code) (40 ILCS 5/1—101 *et seq.* (West 2000)), plaintiff subsequently submitted to annual medical exams certifying her continued disability. 40 ILCS 5/3—115 (West 2000).

At the request of the Board, Dr. Richard P. Harris, a board-certified, licensed physician with a specialty in psychiatry, examined plaintiff on four occasions: August 4, 1997; August 13, 1997; July 9, 1998; and July 13, 1999. He spent a total of 4½ hours with plaintiff and reviewed her prior annual medical evaluations; the treatment notes of Dr. Roger P. Hatcher, her medical provider; and the Board's decision granting the nonduty disability pension.

Dr. Harris testified as follows. Plaintiff is no longer disabled. Plaintiff had suffered from depression and anxiety when she stopped working at the police department. However, by the 1998 examination, she showed no signs of illness, and she appeared to have been treated successfully. Specifically, there was no evidence of a psychiatric impairment. Plaintiff does not currently have posttraumatic stress disorder. She no longer suffers from a mental disability that would prevent her from returning to service with the Aurora police department. However, plaintiff has no interest in returning to the Aurora police department.

In his July 31, 1998, written evaluation, Dr. Harris stated that plaintiff "is not suffering from any psychiatric illness and has regained much of her energy and enthusiasm. She expresses herself in an assertive manner and did not manifest the anxiety seen in so many [previous] evaluations." With respect to returning to work, he wrote that plaintiff "has no desire to work as a police officer. This does not mean that she is disabled. She certainly does not have any active psychiatric disorder. She has a strong distrust of the department." Dr. Harris stated that plaintiff "would not do well if she returned to police work," not because she had a "clear psychological impairment," but because of her lack of interest in the work.

In his July 29, 1999, written evaluation, Dr. Harris stated as follows. Plaintiff is not currently in psychotherapy, and she wakes up crying every two weeks. Her condition has not appreciably changed since the last evaluation. There is no evidence of acute anxiety or depression when plaintiff talks about her experiences, though one would expect such a reaction when discussing such a history.

In addition to the testimony and evaluations of Dr. Harris, the Board reviewed the testimony of Dr. Clifton Rhead, a physician with a specialty in psychiatry, and the testimony of Dr. Roger P. Hatcher, a licensed clinical psychologist who had treated plaintiff for approximately 8½ years.

Dr. Rhead examined plaintiff on January 15, 1999; January 20, 1999; and July 13, 1999. He testified as follows. Plaintiff had posttraumatic stress disorder, which caused her to go on disability. She no longer has posttraumatic stress disorder. However, she should be continued on disability because she continues to be mentally disabled

for work with the police department. Plaintiff is a high risk due to sufficient deficits in her personality. The condition is "in remission, with minimal residual phobic anxiety." Plaintiff has a continuation of "some anxiety symptoms." Her phobic reactions to police, "minimal though they may be, they don't cause her a great deal of handicap but I believe that they are residual." She has a mild phobia in that, for example, she drives around the block to avoid being seen by a police officer. Moreover, she is highly vulnerable to a repeat of the posttraumatic stress disorder. If plaintiff returned to the police department, she would have a very "distant and distrustful relationship" with her coworkers, and the risk of a recurrence of the disorder would be very high. She could probably return to the Oswego police department, her employer prior to the Aurora police department.

Dr. Rhead also testified that there is no medical basis to conclude that his opinion is any more medically correct than that of Dr. Harris.

In his February 5, 1999, written evaluation, Dr. Rhead stated as follows. Plaintiff "has an ill-defined awareness of the destructive consequences of a return [to the police department], specifically the likelihood of an exacerbation of her earlier symptoms in a stressful situation in which she does not feel the support of the environment, with consequent decompensation of her personality structure."

Dr. Hatcher testified as follows. Plaintiff was first diagnosed with posttraumatic stress disorder, depression, and some psychosomatic problems in 1991. Plaintiff has posttraumatic stress disorder, depressive disorder that is in complete remission, chronic depression that is almost completely remitted, and somatization disorder. Plaintiff has phobic anxiety about the police department. Plaintiff continues to have anxious and fearful feelings about the police department and continues to have intermittent nightmares and physical symptoms such as gastrointestinal upsets. Her depression has significantly improved, but she continues to be mentally disabled from performing her duties as a police officer in Aurora. Plaintiff's feelings would not be under her volitional control, in that she would be a danger to herself due to her high anxiety level and her extreme feelings of estrangement from the system. Her experiences with the department "produced a mental disorder that does not allow her to continue to function as a police officer." The trauma was not the witnessing of the police brutality, but her perception that she was abandoned by the "uniformed authority."

Plaintiff testified that she does not wish to return to the Aurora police department because she cannot be "an effectual police officer." Moreover, she does not believe that her fellow officers will be there for her. Whenever she thinks of the police department, she experiences

nausea and diarrhea, and she wakes up crying at night. Plaintiff also stated that she feels that the disability pension "is compensation for the fact that [she] can no longer do the job that [she] initially had, and the reason [she] can no longer do the job is not attributable to [anything] that [she] did to [her]self but rather what the department did to [her.]" She denied that she is punishing the department by collecting disability benefits.

Plaintiff attempted to admit into evidence two newspaper articles describing certain lawsuits alleging police misconduct at the police department and copies of the court complaints referenced in the articles. The Board ruled them inadmissible as prejudicial and irrelevant.

On May 1, 2000, the Board found that plaintiff had "fully recovered from disability," and it terminated her disability pension. See 40 ILCS 5/3—116 (West 2000). In its order, the Board stated that it placed great weight on the testimony of Dr. Harris and that the preponderance of the testimony demonstrated that plaintiff had fully recovered from any mental disability. The Board noted that, although plaintiff testified that she sought treatment from Dr. Hatcher for her disability, the record reflected that she did not receive any treatment from September 28, 1992, through May 25, 1995, and from June 12, 1997, through August 20, 1998. The Board further noted that there were numerous instances of consultations with Dr. Hatcher that did not relate to plaintiff's disability.

The Board's order also noted the inconsistencies in the medical testimony. Dr. Harris testified that plaintiff had fully recovered; that she suffered from no mental impairment; and that she did not suffer from posttraumatic stress disorder, with which she was diagnosed at the time of the Board's 1993 decision. Dr. Rhead concurred in Dr. Harris's assessment that plaintiff did not currently suffer from a mental disability, but he believed that her previous symptoms may manifest themselves again if she returned to duty. Dr. Hatcher's testimony conflicted with that of the other two medical care providers, in that he believed that plaintiff suffered from posttraumatic stress disorder.

Consistent with Dr. Harris's opinion, the Board found that plaintiff did not desire to return to employment with the police in Aurora and that such a desire did not equate to a mental disability. The Board also stated that, without waiving its opinion that the newspaper articles and court complaints were inadmissible, it examined the evidence and concluded that, if they were admissible, they would "not otherwise alter or modify" its decision.

On May 9, 2000, plaintiff filed a complaint for administrative review of the Board's decision (735 ILCS 5/3—103 (West 2000)) with

the circuit court of Kane County, and the court subsequently affirmed the Board's decision.

Plaintiff now appeals to this court, arguing that the Board's termination of her disability pension (1) denied her due process and equal protection of the laws because a minimum of three doctors did not conclude that her disability had terminated and because the articles and court complaints were not admitted into evidence; and (2) was against the manifest weight of the evidence.

■ We first address plaintiff's constitutional arguments. The constitutionality of a statute is a question of law, which we review *de novo*. *Schober v. Young*, 322 Ill. App. 3d 996, 998 (2001).

Plaintiff asserts that, because the evaluations of three doctors were required for her to obtain a disability pension, then it follows that three doctors should be required to concur that her disability has terminated. She contends that the failure of the Board to read this requirement into the Pension Code denied her due process and equal protection of the laws. We disagree.

■ Section 3—115 of the Pension Code provides:

"A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, or by a representative if the officer is under legal disability, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability. Medical examination of a police officer retired for disability shall be made at least once each year prior to attainment of age 50, as verification of the continuance of disability for service as a police officer. No examination shall be required after age 50." 40 ILCS 5/3—115 (West 2000).

Section 3—116 states, in relevant part:

"If a police officer retired for disability, except one who voluntarily retires after 20 years' service, *is found upon medical examination to have recovered from disability*, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position." (Emphasis added.) 40 ILCS 5/3—116 (West 2000).

Plaintiff argues that it is unfair to place a higher burden on her to justify her entitlement to a disability pension (three evaluations) than it is for the Board to terminate her disability pension (one evaluation). She urges us to read into section 3—116 a requirement that three medical doctors concur in the termination of her disability, and she contends that a contrary reading would lead to an unjust result and one that is not in keeping with its spirit and meaning.

■ Administrative proceedings must conform to the constitutional

requirements of due process of law. *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1009 (1999). Procedural due process claims concern the constitutionality of the procedures utilized to deny a person's life, liberty, or property interest. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415 (1997).

■ As a threshold matter, we must consider whether a constitutionally protected liberty or property interest is at stake. *Federation of Teachers*, 178 Ill. 2d at 416. The receipt of a disability pension is a property right that cannot be terminated without meaningful notice. *Wendl v. Moline Police Pension Board*, 96 Ill. App. 3d 482, 486 (1981) ("until properly terminated, [disability pension awards] were present property interests belonging to the plaintiffs. Each plaintiff had a right to continued pension payments, under the statute, so long as the disability was shown to exist").

■ We must next determine what process is due. *Federation of Teachers*, 178 Ill. 2d at 419. The essence of procedural due process is meaningful notice and a meaningful opportunity to be heard. *Stillo*, 305 Ill. App. 3d at 1009. However, due process is a flexible concept, and specific procedural requirements with respect to notice and an opportunity to be heard vary depending upon the character of the rights affected and the degree of deprivation. *Stillo*, 305 Ill. App. 3d at 1009. Thus, some kind of hearing is required before an owner is deprived of his or her property interest. *Stillo*, 305 Ill. App. 3d at 1009. This reasoning has been extended to benefits that are a matter of statutory entitlement. *Stillo*, 305 Ill. App. 3d at 1009, citing *Goldberg v. Kelly*, 397 U.S. 254, 261-64, 25 L. Ed. 2d 287, 295-97, 90 S. Ct. 1011, 1016-19 (1970).

■ We believe that plaintiff had an adequate hearing on the issue of her continued disability status. A procedure that requires only one medical examination to conclude that the plaintiff is no longer disabled, but three evaluations to entitle her to the disability pension, is not inherently unfair and certainly does not infringe upon any constitutional rights. The medical evaluation requirements in sections 3—115 and 3—116 are antifraud provisions, and we believe that the legislature was justified in requiring more medical evaluations to entitle an otherwise eligible police officer to a disability pension than to terminate the pension. These provisions ensure the integrity of the pension fund without infringing upon a participant's constitutional rights.

■ We next address plaintiff's equal protection argument. The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *In re R.C.*, 195 Ill.

2d 291, 309 (2001). The government may not accord different treatment to persons who have been placed by statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation. *R.C.*, 195 Ill. 2d at 309. Where a statutory provision does not affect fundamental rights or make a suspect classification, the appropriate measure of its constitutionality is the deferential rational basis test, which asks whether the statutory classification is rationally related to a legitimate governmental interest. *In re Estate of Jolliff*, 199 Ill. 2d 510, 520 (2002). If a court can reasonably conceive of circumstances that justify distinguishing the class benefitted by the statute from the class outside its scope, the classification is constitutional. *Jolliff*, 199 Ill. 2d at 520.

■ Plaintiff contends that the disparity in the number of required medical evaluations in sections 3—115 and 3—116 of the Pension Code violates her right to equal protection. We reject her argument.

The statute requires that all potential disability pensioners must establish their entitlement to a pension by providing three medical certifications of their disability status. Similarly, all persons receiving a disability pension can lose that pension based on one medical examination that confirms the termination of their disability. The legislature's treatment of potential disability pensioners and those in receipt of disability benefits under the Pension Code is a rational distinction and does not implicate equal protection concerns. The medical examination requirements in the Pension Code are antifraud provisions, and they serve the legitimate legislative goal of ensuring the integrity of the pension fund.

We also reject plaintiff's request that we construe section 3—116 to require the evaluations of three medical providers to certify the termination of a disability. The statutory language is clear that only one medical examination must conclude that an individual is no longer disabled. Thus, we cannot consider other aids of construction. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002).

Plaintiff argues next that her constitutional rights were violated because the Board did not admit into evidence certain newspaper articles and district court complaints. She asserts that this evidence supported her claim that her disability had not ceased or, alternatively, that placing her on active duty would expose her to a recurrence of the mental condition that caused the Board to place her on disability in the first place. Plaintiff contends that, because the technical rules of evidence do not apply to administrative agency proceedings, evidence of her fears and condition should have been admitted. See 735 ILCS 5/3—111(b) (West 1996). Moreover, she asserts that statements offered for their effect on the listener do not constitute hearsay and are therefore admissible.

We reject plaintiff's constitutional argument because she is essentially challenging a ruling on the admissibility of documentary evidence. As we stated above, the guarantee of procedural due process is one of notice and an adequate opportunity to be heard. *Stillo*, 305 Ill. App. 3d at 1009. Here, plaintiff had an adequate opportunity to offer documentary evidence relating to her state of mind. Plaintiff disagrees with the ruling and characterizes her argument in constitutional terms. We find no constitutional violation in the evidentiary ruling.

■ Although we reject her constitutional argument, we will nevertheless address her challenge to the ruling on the admissibility of the evidence. The determination of the admissibility of evidence is a matter of a trial court's discretion and will not be reversed absent an abuse of that discretion. *McCleary v. Board of Fire & Police Commissioners*, 251 Ill. App. 3d 988, 997 (1993). The rule also applies to an agency's decision to exclude evidence. *McCleary*, 251 Ill. App. 3d at 997. An abuse of discretion occurs when no reasonable person would take the view adopted by the court. *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998).

■ When questioned about the newspaper articles, plaintiff stated that she forwarded them to her attorney because they served as examples of ongoing personnel troubles at the police department and because she believed the allegations described in the articles.

Assuming *arguendo* that the Board erred, we find that its error was harmless because there was sufficient evidence presented on plaintiff's state of mind, including the plaintiff's own testimony and that of three doctors. Moreover, the Board stated in its written order that it had reviewed the material and concluded that, if it was admissible, it would not have altered the decision. For these reasons, if the Board erred, its error would not warrant reversal of its decision.

■ Plaintiff's final argument is that the Board's decision to terminate her disability pension is against the manifest weight of the evidence.

The findings and conclusions of an administrative agency on questions of fact are deemed *prima facie* true and correct and are not to be disturbed unless they are against the manifest weight of the evidence. *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1075 (1997); see 735 ILCS 5/3—110 (West 1998). The agency's findings and decisions are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Rhoads*, 293 Ill. App. 3d at 1075. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify the reversal of the administra-

tive findings. *Rhoads*, 293 Ill. App. 3d at 1076. Moreover, "because the weight of the evidence and the credibility of the witnesses are within the province of the [agency], there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184 (1992).

Plaintiff argues that the testimony of Dr. Hatcher, who had treated her for over eight years, should have carried more weight than that of Dr. Harris, whom the Board selected and who had limited contact with plaintiff. Plaintiff also contends that the resume of Dr. Harris "pales in comparison" to that of Dr. Rhead, in that Dr. Rhead had substantially more experience and familiarity with police and their work than did Dr. Harris. She also asserts that Dr. Harris's evaluation contained value judgments, as opposed to objective assessments of her condition. Thus, plaintiff requests the reinstatement of her disability pension plus interest.

We find that there was sufficient evidence to support the Board's finding that plaintiff's disability had terminated. The Board reviewed all of the medical testimony and evaluations and found Dr. Harris's testimony most persuasive. Although Dr. Hatcher stated that he treated plaintiff for 8½ years, the record reflects significant breaks in such treatment and shows that many treatment sessions did not address plaintiff's disability. Although we agree that an individual's own medical provider can have a unique insight into his or her patient's condition, we must defer to the Board's assessment of the testimony and the credibility of the witnesses.

We similarly reject plaintiff's assertion that Dr. Rhead's experience in evaluating police officers should have rendered his testimony more persuasive than that of Dr. Harris. Although Dr. Rhead had more experience in evaluating police officers than did Dr. Harris, it was within the Board's purview to credit the testimony of Dr. Harris more than that of Dr. Rhead. We also note that Dr. Rhead testified that there is no medical basis to conclude that his opinion was any more medically correct than that of Dr. Harris.

Finally, we reject plaintiff's assertion that Dr. Harris's evaluation was biased. Plaintiff refers to Dr. Harris's July 1998 written evaluation, in which he stated, "Ms. Trettenero believes the department punished her and thinks the board should continue paying her benefits. She implies she deserves some retribution for what happened to her. She may be correct but the pension board approves payment based on the presence of a disability."

We do not agree that the Board should have discredited Dr. Harris's evaluation due to the aforementioned language. We do not agree that it denotes a bias in his testimony. Rather, it appears to be a sincere

assessment of her medical condition, and the Board was free to credit it.

For these reasons, we find that it was not against the manifest weight of the evidence for the Board to find that plaintiff was no longer disabled and, accordingly, to terminate her disability pension.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

O'MALLEY and BYRNE, JJ., concur.