SECOND DIVISION
February 2, 2010

No. 1-08-1212

DARREN WILLIAMS,                                    )          Appeal from the Circuit
                                                   )          Court of Cook County.
                Plaintiff-Appellant,               )
                                                   )
        v.                                         )
                                                   )          No. 06 CH 9812
THE BOARD OF TRUSTEES OF THE                       )
MORTON GROVE FIREFIGHTERS' PENSION                 )
FUND, and the VILLAGE OF MORTON GROVE, )                      Honorable
                                                   )          Sophia H. Hall,
                Defendants-Appellees.              )          Judge, Presiding.

        JUSTICE THEIS delivered the opinion of the court:

        Plaintiff, Darren Williams, filed an application for a line-of-duty disability pension with

defendant, the Board of Trustees of the Morton Grove Firefighters' Pension Fund (Board),

pursuant to section 4-110 of the Illinois Pension Code (the Pension Code) (40 ILCS 5/4-110

(West 2006)).  Plaintiff subsequently amended his application to include a claim for a not-in-duty

disability pension pursuant to section 4-111 of the Pension Code.  40 ILCS 5/4-111 (West 2006).

One day before the hearing on plaintiff's application, the Village of Morton Grove (Village) filed a

petition to intervene in the hearing, which the Board granted.  The hearing was conducted by the

attorney for the Morton Grove Firefighters' Pension Fund (Fund).  The Board voted to deny

plaintiff a line-of-duty pension, but granted him a not-in-duty disability pension pursuant to

section 4-111.  40 ILCS 5/4-111 (West 2006).

        Thereafter, plaintiff filed a complaint for administrative review in the circuit court of Cook

County.  The circuit court affirmed the Board's decision.  Plaintiff filed this timely appeal in which

he argues that: (1) the Board's denial of a line-of-duty pension was against the manifest weight of the evidence; (2) allowing the four village representatives to participate in the adjudication of his application after the Village intervened violated his right to due process; and (3) the Board abused its discretion when it permitted the Village to intervene in plaintiff's pension hearing. For the following reasons, we reverse the decision of the Board and remand with instructions.

BACKGROUND

Plaintiff received his probationary appointment to the fire department of Morton Grove (Department) on July 19, 1989, with his regular appointment following on August 27, 1991. Plaintiff held the position of firefighter/paramedic. Plaintiff testified at the administrative hearing that he injured his right shoulder on the morning of September 27, 2003, while responding to an ambulance call during which he transferred a patient from an ambulance cot to the hospital gurney at Lutheran General Hospital. On September 29, plaintiff reported his injury to Lieutenant Thomas Durment, who sent him to Advocate Occupational Health (Advocate) for treatment and generated paperwork to document the incident.

Plaintiff was treated at Advocate by Dr. S. Joseph Maurice, who conducted a physical examination and diagnosed plaintiff with a right acromioclavicular (AC) joint strain. Plaintiff also received physical therapy at Advocate on September 29. Dr. Maurice's records reflect that plaintiff had a follow-up visit on October 3, 2003, during which he informed Dr. Maurice that he had sought treatment from a private orthopedic surgeon and that he would discontinue his treatment at Advocate.

Dr. Steven Sclamberg (Dr. Sclamberg) testified that plaintiff was treated by his father, Dr. Edward Sclamberg, on October 1. He was diagnosed with a right shoulder AC joint sprain and injected with a steroid. Plaintiff had a follow-up visit with Dr. Edward Sclamberg on October 13, 2003. Plaintiff received a return-to-work slip stating that he could return to unrestricted active duty on October 14, 2003. Plaintiff testified that he returned to full, unrestricted duty on October 14.

Plaintiff was next examined by Dr. Sclamberg on February 24, 2004. Dr. Sclamberg took an X-ray of plaintiff's shoulder and injected it with a steroid. On March 9, 2004, plaintiff spoke on the telephone with Dr. Sclamberg and reported that he had not received any relief from the injection. As a result, Dr. Sclamberg scheduled surgery for later that month.

Dr. Sclamberg performed arthroscopic surgery on plaintiff's right shoulder during which he found, and repaired, a superior labrum anterior to posterior (SLAP) tear. He also found AC osteoarthritis, rotator cuff tendinitis and inflammation of the bursa. Plaintiff had a postsurgical follow-up visit with Dr. Sclamberg on May 11, 2004. During this visit, Dr. Sclamberg taught plaintiff three range-of-motion exercises to perform at home and prescribed continued physical therapy.

Plaintiff saw Dr. Sclamberg again on June 8, 2004. He recommended that plaintiff continue with his physical therapy. Plaintiff returned to Dr. Sclamberg on July 15, 2004. At this visit, plaintiff exhibited full strength in his right shoulder, with no tenderness or signs of impingement, but complained of pain on lifting. Dr. Sclamberg examined plaintiff again on August 10, 2004, ordered an X-ray and recommended that plaintiff continue with his physical

therapy. Plaintiff next saw Dr. Sclamberg on August 19, 2004. During this visit, Dr. Sclamberg examined plaintiff and scheduled a second surgery on plaintiff's right shoulder for August 25, 2004.

During this second surgery, Dr. Sclamberg found and repaired a small rotator cuff tear and a SLAP tear. Plaintiff had his first postoperative visit with Dr. Sclamberg on October 7, 2004, and was told that he would be out of work for six weeks. Plaintiff had his second postoperative visit with Dr. Sclamberg on November 15, 2004, at which time he was cleared to return to light duty. Dr. Sclamberg next saw plaintiff on November 30, 2004, and ordered an MRI because plaintiff reported that he had felt a "pop" during physical therapy. Plaintiff next saw Dr. Sclamberg on December 2, 2004, at which time he ordered another MRI. Plaintiff returned to Dr. Sclamberg on January 6, 2005, and was diagnosed with adhesive capsulitis, commonly referred to as a "frozen shoulder."

Plaintiff filed an application for a line-of-duty disability pension, which he subsequently amended to add a claim for a not-in-duty disability pension. The Board held a hearing on plaintiff's pension application. Pursuant to section 4-121 of the Pension Code, as it existed in 2005, the Board consisted of three firefighters, the president of the Morton Grove Board of Trustees, the village clerk, the village corporate attorney, the village treasurer and the chief of the

fire department. 40 ILCS 5/4-121 (West 2004).[1] The village mayor was also a member of the Board. The attorney for the Fund conducted the hearing.

The day before the first hearing session, the Village filed a petition to intervene in the hearing. Before hearing any evidence in this matter, the Board heard argument on the Village's written petition to intervene and plaintiff's opposition. The Village argued that the Board had the discretion to allow the Village to intervene and that to fail to do so in this case would be an abuse

---

[1] Section 4-121 was amended by Public Act 94-317 (Pub. Act 94-317 § 5, eff. July 25, 2005). This act changed the composition of firefighter pension boards in municipalities with fewer than 500,000 residents by adding language terminating the terms of the existing board members as of the third Monday of April 2006 and adding the following language:

"Beginning on the 3rd Monday in April, 2006, the board for each municipality or fire protection district shall consist of 5 members. Two members of the board shall be appointed by the mayor or president of the board of trustees of the municipality or fire protection district involved. Two members of the board shall be active participants of the pension fund who are elected from the active participants of the fund. One member of the board shall be a person who is retired under the Firemen's Pension Fund Act of 1919 or this Article who is elected from persons retired under the Firemen's Pension Fund Act of 1919 or this Article." Public Act 94-317 § 5, eff. July 25, 2005.

of discretion. The Village offered three reasons that it should be permitted to intervene. First, the Village had an interest in "ensuring the proper expenditure of public funds by the pension board" and in making sure "those funds are expended appropriately only for those firefighters who are entitled to pension benefits." Because the Village contributes money to the fund, it argued that it had "a very real interest" in the protection of the fund. Second, the Village argued that its interest in the potential award of health insurance benefits to plaintiff and his family under the Public Safety Employee Benefits Act (the Act) (820 ILCS 320/1 et seq. (West 2006)), supported its petition to intervene because the Village would be financially responsible if plaintiff received benefits under the Act. The Village explained, however, that it was not seeking to intervene "to advocate for or against PSEBA benefits for [plaintiff]." Finally, the Village asserted that it had an interest in developing a full evidentiary record on which the Board would base its decision. The Village stated that it would call witnesses to offer medical testimony regarding plaintiff's injury and alleged disability, cross-examine the witnesses, and obtain legible copies of certain documents and additional documents to supplement the exhibits prepared by the Board.

At the hearing, plaintiff argued that the Board had the discretion to permit the Village to intervene, but the Board must exercise its discretion with care. The Board would be abusing its discretion if it permitted the Village to intervene because the hearing would become an adversarial proceeding in which the Village's own employees and agents would be sitting on the Board to decide plaintiff's application for a pension. Plaintiff also argued that introducing the idea of plaintiff's entitlement to health insurance benefits under the Act was a violation of the exclusive purpose rule (40 ILCS 5/1-109 (West 2006)).

The Board voted 5 to 3 to grant the Village's petition to intervene and 6 to 2 to permit the Village to participate fully in the hearing. Plaintiff's counsel immediately made an oral request that the mayor, village corporate attorney, village clerk and village treasurer (but not the village fire chief) recuse themselves from participating in the hearing because once the Village was allowed to intervene, there was a per se conflict of interest for the Board members who were also Village officers. Plaintiff followed the oral motion with a written motion to recuse and the Village filed a response. The Fund's attorney instructed the Board that it could not grant or deny the motion to recuse, but rather each Board member who was subject to the motion would be given the opportunity to address plaintiff's request with respect to his or her participation in the hearing. The Fund's attorney questioned each of these four village officials regarding his or her response to plaintiff's request to recuse and his or her ability to sit as an impartial decisionmaker. Each official, including the village corporate attorney, Ms. Liston, responded that he or she would not voluntarily recuse him or herself and that he or she could be fair and impartial.

Liston, however, played an active role in the hearing. For example, four days before the first session of the hearing, Liston provided a copy of the record to an outside attorney representing the Village, Ms. Leka. When explaining why she provided the record to Leka, Liston stated:

> "I have a copy. And that's our attorney. And the only way that the village can have a discussion as to whether or not there is a basis to intervene is by sharing those records. It's not like you gave it to somebody off the street or your neighbor. The village's attorney was given copies of those records."

7

Liston further defended her unilateral decision to provide the record to outside counsel for the Village:

"[C]learly they don't intervene on [*sic*] every case, and it's based on the facts and the circumstance of the case. And unless the village knows the facts and the circumstances of the case, unless pro forma the village is going to start intervening in every case and figure out later what the issues are, it seems to me you would have to know something about the case before you can form an opinion on should you intervene or shouldn't you intervene.

\* \* \*

But I think justice would require so that you have a full hearing, that the stake holders in the decision, the people that are impacted by the decision have the right to put on a full and possibly an adversarial hearing. And I don't understand how the village can make a determination that it should participate in a hearing if they can't be told what the facts are and what the issues are."

Liston also objected repeatedly to evidence offered by plaintiff at the hearing. For example, during the questioning of Fire Chief Friel, Liston objected to a question asked by plaintiff's counsel. The following exchange took place:

"RADJA [Plaintiff's attorney]: On January 6th of '05, did you have any reason to doubt [plaintiff's] statement that he wouldn't be able to do anything with his arm?

LISTON: Objection. Same one. Are you asking his opinion or are you

8

asking him if he was aware of anything else that would controvert [plaintiff's] statement?

RADJA: I think anything I ask him is his opinion. I am asking his opinion if on this particular day when he told him he couldn't do any work –

LISTON: Why is his opinion relevant?

RADJA: Well, as the head of the fire department I think it's extremely relevant.

LISTON: Because?

RADJA: He has the ability to question this officer further.

LEKA: But it doesn't go to the ultimate issue here though about whether he is currently – his current condition is caused by – I mean it doesn't go to his current condition, one, or two what the causation factor is.

CLIFFORD [the Fund's attorney]: Rephrase the question. If he took any action to investigate whether –

LEKA: Well, those have already been asked and answered, haven't they?

RADJA: I will move on. It's obvious I have two village attorneys objecting to my questioning of the witness.

LISTON: I was asking for clarification actually. And I am sitting here as a member of the board, not as the village attorney."

During the next hearing session, after the Village's counsel had questioned the relevance of a line of questioning by plaintiff's counsel and moved to strike one of plaintiff's answers, Liston

9

also objected and moved that the entire line of questioning be barred.

"CLIFFORD: Right. And I don't think he's asked to admit the exhibit yet. That would be a separate question. I think right now we're just asking if the charge exists.

LEKA: What is the relevance of that?

LISTON: Excuse me, Miss Leka. The problem I have is [plaintiff's counsel] just stated there is no relevance. Why do we need to hear anything on it?

* * *

LISTON: I move that this line of questioning be barred for lack of relevance."

The Board received extensive medical evidence and testimony regarding plaintiff's injury. Pursuant to section 4-112 of the Pension Code, the plaintiff was examined by three physicians selected by the Board. 40 ILCS 5/4-112 (West 2004). The Board also heard testimony from plaintiff's treating physician and an independent forensic medical examiner who was hired by the Village. The medical testimony and documentary evidence conflicted regarding the nature and cause of plaintiff's disability. The Board voted to deny plaintiff a line-of-duty disability pension, but granted him a not-in-duty disability pension. Plaintiff filed a timely complaint for administrative review in the circuit court of Cook County. The circuit court affirmed the Board's decision and plaintiff timely appealed to this court.

ANALYSIS

Pursuant to section 4-139 of the Pension Code (40 ILCS 5/4-139 (West 2004)), judicial

10

review of an administrative board's decision is conducted in accordance with the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2006)). The court reviews the decision of the administrative agency, not the determination of the circuit court. Marconi v. Chicago Heights Police Pension Board, 225 Ill. 2d 497, 531 (2007). The scope of the court's review extends to "all questions of law and fact presented by the entire record before the court" and the court may not consider any new or additional evidence. 735 ILCS 5/3-110 (West 2006); Marconi, 225 Ill. 2d at 532. "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2006); see also Marconi, 225 Ill. 2d at 540.

The applicable standard of review turns on whether the question presented on appeal is a question of fact, a question of law or a mixed question of law and fact. Marconi, 225 Ill. 2d at 532. Questions of law are reviewed de novo. Marconi, 225 Ill. 2d at 532. Mixed questions of law and fact are reviewed under the clearly erroneous standard. Marconi, 225 Ill. 2d at 532.

Plaintiff applied for a line-of-duty disability pension under section 4-110 of the Pension Code (40 ILCS 5/4-110 (West 2004)), or, alternatively, a not-in-duty disability pension under section 4-111 of the Pension Code (40 ILCS 5/4-111 (West 2004)). The Board denied plaintiff's application for a line-of-duty disability pension, but granted him a not-in-duty disability pension. Plaintiff argues that the Board's finding that his disability was not a line-of-duty disability was against the manifest weight of the evidence. Because we are vacating the Board's decision on other grounds and remanding for a new hearing, we do not address the Board's findings regarding the nature of plaintiff's disability.

Plaintiff argues on appeal that the Board had discretion to permit the Village to intervene, but it abused that discretion because the Village did not have a legitimate reason to intervene. The parties have not cited a case in which a party challenged on appeal a pension board's decision to permit or deny a municipality's petition to intervene in a pension application hearing under Article 4 of the Pension Code. This court has, however, addressed a municipality's right to intervene in a disability hearing under Article 3 of the Pension Code and held that the board had the "power to exercise its discretion in deciding whether to allow a party to intervene." Village of Stickney v. Board of Trustees of the Police Pension Fund, 347 Ill. App. 3d 845, 851 (2004). A board must exercise its discretion with care. Village of Stickney, 347 Ill. App. 3d at 852.

Although Article 3 of the Pension Code "is silent as to intervention in administrative hearings, the statute entrusts the Board with establishing and administering a police pension fund. [Citation]" Village of Stickney, 347 Ill. App. 3d at 852. Section 3-131 provides that a board has the powers enumerated under Article 3, including the power to "control and manage the pension fund" under section 3-132. 40 ILCS 5/3-131, 3-132 (West 2006). Section 3-132 states that a board has the power "to control and manage, exclusively," the following:

> "(1) the pension fund,
>
> (2) investment expenditures and income, including interest dividends,
>
> capital gains and other distributions on the investments, and
>
> (3) all money donated, paid, assessed, or provided by law for the
>
> pensioning of disabled and retired police officers, their surviving spouses, minor
>
> children, and dependent parents." 40 ILCS5/3-132 (West 2006).

12

In <u>Village of Stickney</u>, the court concluded that the board had the authority to hold pension fund hearings and to establish proceedings for those hearings because the legislature intended to provide the board with " 'exclusive authority over issues of eligibility to participate in the police pension fund.' " <u>Village of Stickney</u>, 347 Ill. App. 3d at 852, quoting <u>City of Benton Police Department v. Human Rights Comm'n</u>, 160 Ill. App. 3d 55, 57 (1987). The court held that the board's exclusive authority included "the authority to decide who may participate in the hearings and to what extent." <u>Village of Stickney</u>, 347 Ill. App. 3d at 852.

Absent controlling authority from the supreme court, the reasoning set forth in <u>Village of Stickney</u> is persuasive. See <u>Village of Stickney</u>, 347 Ill. App. 3d at 852, 807 N.E.2d at1084. Article 4 of the Pension Code also vests firefighter pension boards with enumerated powers and duties (see 40 ILCS 5/4-122 (West 2006)), including the power "to control and manage, exclusively," the following:

"(1) the pension fund,

(2) investment expenditures and income, including interest dividends, capital gains and other distributions on the investments, and

(3) all money donated, paid, assessed, or provided by law for the pensioning of disabled and retired firefighters, their surviving spouses, minor children, and dependent parents." 40 ILCS 5/4-123 (West 2006).

A board's exclusive authority to control the pension fund and disability payments includes the power to conduct the hearings and the discretion to decide who can participate in those hearings and to what extent. See <u>Village of Stickney</u>, 347 Ill. App. 3d at 852; cf. <u>Coyne v. Milan Police</u>

13

Pension Board, 347 Ill. App. 3d 713, 716 (2004). This discretion is not unlimited, because it can be abused. See Village of Stickney, 347 Ill. App. 3d at 852. A board "abuses its discretion when it acts arbitrarily or capriciously." Village of Stickney, 347 Ill. App. 3d at 852.

In Village of Stickney, the court determined that the board did not abuse its discretion when it denied a village's request to participate in the hearing. The court noted that the board "must have believed it had some authority to allow Village participation" because it sent the village a letter informing the village that if it wanted to file a petition to intervene, it had to do so before a certain date. Village of Stickney, 347 Ill. App. 3d at 852. The village did not file a petition by the deadline, but attorneys for the village appeared at the hearing requesting to be allowed to cross-examine the applicant and review the evidence "to make sure it was presented properly and was admissible." Village of Stickney, 347 Ill. App. 3d at 847. The board unanimously denied the village's request to participate in the hearing. Village of Stickney, 347 Ill. App. 3d at 847. On appeal, the court found that the board's refusal of the village's request to question the applicant was not arbitrary or capricious because an "administrative body may impose limitations on cross-examination, such as requiring notice prior to the hearing or an explanation of the party's interest in the proceedings, beyond that of the general public." Village of Stickney, 347 Ill. App. 3d at 852-53.

Here, the Village filed a petition to intervene one day before the first session of the administrative hearing. The Village argued that it was seeking to intervene to help provide a complete record through documents not contained in the Board's preliminary book of exhibits, to ensure the proper expenditure of public funds by making sure that pension funds are paid to

qualified firefighters, and to protect the Village's financial interests that could be affected if plaintiff applied for health insurance benefits under the Act. The Board voted 5 to 3 to allow the Village to intervene.

Whether the Board's decision to permit the Village to intervene was an abuse of discretion is a close question and there is little case law for guidance. A village's request to cross-examine a pension applicant and its desire to create a full administrative record, without more, was not sufficient to support the village's request to participate in the administrative hearing in Village of Stickney. See Village of Stickney, 347 Ill. App. 3d at 847. However, protecting a municipality's interest in the proper expenditure of funds may be a sufficient basis for permitting intervention when combined with another interest. See, e.g., Coyne, 347 Ill. App. 3d at 716 (the board granted a village's petition to intervene to protect its interest in the expenditure of its pension funds and because the applicant was the subject of a union grievance involving similar issues). This court has also held that a city's obligation to levy taxes, combined with an interest in correcting the formula for computing a pension, is sufficient to permit a city to appeal an administrative decision, even where the city did not intervene in the underlying administrative hearing. See Karfs v. City of Belleville, 329 Ill. App. 3d 1198, 1204 (2002).

On the facts of this case, the Board did not abuse its discretion when it permitted the Village to intervene. Unlike the municipality in Village of Stickney, the Village filed its petition before the hearing started. See Village of Stickney, 347 Ill. App. 3d at 852. The issue was briefed fully by the Village and plaintiff before the Board heard any evidence. As in Coyne, the Village sought to ensure the expenditure of the pension funds to which it contributed. See Coyne,

15

347 Ill. App. 3d at 716. The attorney for the Fund provided copies of the opinions in both Village of Stickney and Coyne to the Board members before they voted on the Village's petition to intervene. Moreover, the Village described some of the additional evidence that it would offer during the hearing to assist the Board with its fact-finding regarding plaintiff's application. We cannot say that the Board acted arbitrarily or capriciously when it voted at the beginning of the hearing to grant the Village's petition to intervene.

Plaintiff argues that once the Village became a party, his due process right to a fair and impartial hearing was violated by the participation on the Board of certain village officials. Specifically, he argues that: (1) allowing the village officials to remain on the Board after the Village intervened created a per se conflict; (2) the village officials on the Board violated the exclusive purpose rule; and (3) the corporate attorney for the Village was biased against the granting of plaintiff's application for a line-of-duty disability pension.

Plaintiff does not cite to any authority for his assertion that he has a due process right to a fair hearing. There are two possible sources of plaintiff's asserted right to due process – one constitutional and the other statutory. First, the constitutions of the United States and of Illinois provide a right to procedural due process and prohibit the deprivation of property without due process. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2; see also Mathews v. Eldridge, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 31, 96 S. Ct. 893, 901 (1976); Peacock v. Board of Trustees of the Police Pension Fund, No. 1-09-0040, slip op. at 12 (Oct. 20, 2009). To establish a violation of the constitutional right to due process, a plaintiff must show a deprivation of property and a denial of due process. See Schroeder v. City of Chicago, 927 F.2d 957, 959 (7th Cir.

16

1991); see also <u>Trettenero v. Police Pension Fund</u>, 333 Ill. App. 3d 792, 799 (2002) ("As a threshold matter, we must consider whether a constitutionally protected liberty or property interest is at stake"). "The receipt of a disability pension is a property right that cannot be terminated without meaningful notice." <u>Trettenero</u>, 333 Ill. App. 3d at 799; see also <u>Mathews</u>, 424 U.S. at 333, 47 L. Ed. 2d at 31, 96 S. Ct. at 901 (stating that "continued receipt of [Social Security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment").

Although a firefighter who already is receiving a disability pension has a protected property right in the continued receipt of his or her pension, it is an open question in Illinois whether a firefighter who has applied for a disability pension has a protected property interest in that disability pension before the administrative agency determines that the firefighter has satisfied the statutory requirements for receipt of such a pension. The United States Court of Appeals for the Seventh Circuit has examined this issue and stated that a disability pension "that is a matter of right, not of grace, is a property right within the meaning of the due process clause." <u>Schroeder</u>, 927 F.2d at 959. To have a property interest in a disability benefit, a person must have more than a "unilateral expectation" of receiving the benefit. <u>Nelson v. Board of Trustees of the Police Pension Fund</u>, 141 Ill. App. 3d 411, 415 (1986); see also <u>Caauwe v. Police Pension Board</u>, 216 Ill. App. 3d 313, 317 (1991) ("As a general proposition of law, pensions or annuity benefits of public employees are not vested property rights entitled to the protection of due process as guaranteed by the United States Constitution"). Regardless of whether plaintiff, at the application stage of the proceedings, had a protected property interest in a line-of-duty disability pension,

17

plaintiff was afforded an administrative hearing to determine whether he qualified for such a pension and, therefore, he has a right to due process, including the right to a fair and impartial hearing.

Administrative hearings are "governed by the fundamental principles and requirements of due process of law." Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 92 (1992). On administrative review, a court must examine the procedures employed during the administrative hearing to determine whether they were fair and impartial. Abrahamson, 153 Ill. 2d at 92-93. "[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." Abrahamson, 153 Ill. 2d at 92. In an administrative proceeding, due process does not require a full judicial proceeding. Abrahamson, 153 Ill. 2d at 92. Nor is it a "partisan hearing with the agency on one side arrayed against the individual on the other. Rather, it is an administrative investigation instituted for the purpose of ascertaining and making findings of fact." Abrahamson, 153 Ill. 2d at 94-95. "A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." Abrahamson, 153 Ill. 2d at 95.

Plaintiff argues that the participation on the Board by Village officials violated his right to an impartial tribunal because it created a per se conflict of interest. Section 4-121, as it existed at the time of plaintiff's application, required that four village officials, including the village attorney, participate on the pension board. 40 ILCS 5/4-121 (West 2004). Although this section subsequently was amended to change the composition of pension boards, the stated purposes of

the amendment were to make the composition of firefighter pension boards consistent with the police pension boards and to try to eliminate any advantage that the municipality or applicant may have had under the previous system. See 94th Ill. Gen. Assem., House Proceedings, March 10, 2005, at 22 (statements of Representative Smith). Under the new statutory scheme, the mayor of the village appoints two members of the pension board and there is no prohibition against appointing the attorney for the village or any other village official. 40 ILCS 5/4-121 (West 2006).

As discussed above, a board has the discretion to permit a municipality to intervene in a hearing. If plaintiff's argument were correct, then every time a pension board permitted a municipality to intervene, any officials of the municipality who were appointed under the statute would have to recuse themselves from the board, thereby leaving only those three members of the board who were appointed by participants of the fund. This directly contradicts one of the stated purposes of the amendment. Plaintiff does not cite to any case in the civil context where a court found a per se conflict of interest in the composition of an administrative body nor does plaintiff challenge the constitutionality of section 4-121. The participation on the Board of the Village officials does not create a per se conflict of interest that requires reversal.

Plaintiff further argues that the participation of the corporate attorney for the Village violated his right to a fair and impartial hearing because she was biased against plaintiff's application and had a conflict of interest that infected the entire process. "An individual challenging the impartiality of an administrative tribunal must overcome a presumption that those serving in such tribunals are fair and honest." Turcol v. Pension Board of Trustees of Matteson

Police Pension Fund, 359 Ill. App. 3d 795, 804 (2005). To establish bias, "plaintiff must prove that members of the adjudicating body had to some extent adjudged the facts as well as the law of the case in advance of hearing it." Turcol, 359 Ill. App. 3d at 804. There must be more than "the mere possibility of bias or that the decisionmaker is familiar with the facts of the case." Danko v. Board of Trustees of the City of Harvey Pension Board, 240 Ill. App. 3d 633, 641 (1992). During the administrative hearing, "it is appropriate for each member to consider his own personal bias or prejudice and determine for himself whether his recusal is necessary." Huff v. Rock Island County Sheriff's Merit Comm'n, 294 Ill. App. 3d 477, 482 (1998). If "one decision maker on an administrative body is not completely disinterested, his participation ' "infects the action of the whole body and makes it voidable." ' [Citation.]" Danko, 240 Ill. App. 3d at 642.

The determination of whether an administrative hearing was fair and impartial requires a fact-specific analysis of the conduct of the board members before and during the hearing. Danko, 240 Ill. App. 3d at 642-44. Courts have found that an applicant was denied a fair hearing as the result of a single egregious act or a combination of less offensive acts. See, e.g., Danko, 240 Ill. App. 3d at 643 (holding that applicant was denied fair hearing where the board denied all or most of the applicant's motions and objections, the chairman was intimately involved with the facts of the case, and the chairman called an applicant a liar during the hearing); O'Callaghan v. Retirement Board of Firemen's Annuity & Benefit Fund, 302 Ill. App. 3d 579, 586 (1998) (holding that applicant was denied a fair hearing where a medical expert told the applicant not to appear at the hearing because he was going to inform the board that the applicant was disabled in

20

the line of duty, but then changed his testimony after requesting an executive session with the board). This court also has found an impermissible conflict of interest where the members of the hearing board who were ruling on a permit application that would generate significant revenue for the district were also district officials. E&E Hauling, Inc. v. Pollution Control Board, 116 Ill. App. 3d 586, 597 (1983). Courts have not found bias where the acts of a decisionmaker are less pernicious. See, e.g., Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund, 186 Ill. App. 3d 715, 721 (1989) (no bias where a board member objected to the relevancy of "detailed testimony" at the hearing); Coyne, 347 Ill. App. 3d at 722 (no bias where the municipality official stated on the record that he or she had not pre-judged the facts and law of the case). Although an isolated comment or act may not render a hearing unfair, the cumulative effect of a number of factors may, as in Danko, result in an unfair or partial hearing. Danko, 240 Ill. App. 3d at 643-44.

Administrative proceedings are not judicial proceedings, but the parties are entitled to a fair hearing before a disinterested tribunal. See Bender v. Board of Fire & Police Commissioners, 254 Ill. App. 3d 488, 491 (1993). The actions of the corporate Village attorney, Liston, infected the proceedings and resulted in an unfair hearing on plaintiff's application. First, a few days before the hearing on plaintiff's application, Liston unilaterally provided a copy of the Board's exhibits to an outside attorney hired by the Village in this matter. Liston compounded her ex parte contact when she defended her conduct, and the Village's petition to intervene, in a manner that was more akin to advocacy than statements of a disinterested decisionmaker.

Liston's advocacy continued throughout the hearing as she repeatedly objected to

questions asked by plaintiff's counsel. At one point, after an objection by Leka, Liston took it upon herself to further explain the basis for the objection.

"LEKA: What is the relevance of that?

LISTON: Excuse me, Miss Leka. The problem I have is he just stated there is no relevance. Why do we need to hear anything on it?"

She also moved to bar plaintiff's counsel from asking questions about and admitting an exhibit regarding a discrimination charge that plaintiff filed with the Equal Employment Opportunity Commission. Although Liston questioned the scope of the Village's cross-examination of one witness, she ultimately agreed that the witness should testify regarding the issue and does not appear to have made any other objections to the admission of evidence or testimony offered by the Village. Regardless of the ultimate propriety of Liston's objections and/or motion regarding evidence offered by plaintiff, her actions demonstrate that she was advocating on behalf of the Village rather than acting as a disinterested decisionmaker.

Further, Liston extensively questioned certain witnesses. For example, she asked 28 substantive questions, uninterrupted, of Dr. Samo, one of the three independent medical evaluators. She also asked 45 substantive questions, again uninterrupted, of Dr. Sclamberg, plaintiff's treating physician. Although many of the other Board members asked questions during the hearing, not one of the other Board members conducted such a thorough and uninterrupted examination of any of the witnesses.

Liston's active role during the hearing differed in kind from the mere objection to "detailed testimony" that was permitted in Batka. See Batka, 186 Ill. App. 3d at 721. At various

22

times throughout the hearing, Liston assumed an advocacy role in support of the Village and against plaintiff. Her actions infected the whole proceedings and denied plaintiff a fair and impartial hearing.

CONCLUSION

For the foregoing reasons, we reverse the Board's decision and remand this case to the Board for a new hearing on plaintiff's application for a line-of-duty disability pension pursuant to section 4-110 or, alternatively, a not-in-duty disability pension pursuant to section 4-111. Because the statute governing the composition of the board of trustees has been amended since plaintiff's hearing, we determine which version of section 4-121 should be applied on remand.

The general rule is that an amended statute will not be applied retroactively if the amendment affects a party's substantive rights or if application of the amended statute would deprive a party of a vested constitutionally-protected right. See Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc., 240 Ill. App. 3d 360, 364 (1992). Section 4-121 affects the procedure for determining whether plaintiff is entitled to a disability pension, not the substantive requirements for a disability pension and, therefore, it is a procedural statute that can be applied on remand as long as its application does not deprive plaintiff of a vested constitutionally protected right. See, e.g., County of La Salle v. Pollution Control Board, 146 Ill. App. 3d 603, 608 (1986). Regardless of whether or not plaintiff has a vested, constitutionally protected right to a disability pension before the hearing on his application for that pension, application of amended section 4-121 does not deprive plaintiff of a disability pension; it merely sets forth one procedural aspect of the administrative hearing to determine the merits of plaintiff's application. Therefore,

on remand, plaintiff's hearing shall be conducted before a board that is constituted pursuant to the amended version of section 4-121 of the Pension Code (40 ILCS 5/4-121 (West 2006)).

Reversed; cause remanded with instructions.

CUNNINGHAM, P.J., and KARNEZIS, J., concur.